PeaesoN, C. J.
 

 Ilis Honor assuming that there was a violation of the contract on the part of the defendant, held that the burden of proving the cause of the death of the slave was on the plaintiff, and that in the absence of such proof, she was entitled only to nominal damages.
 

 This Court is of opinion that it was for the defendant to prove how the slave was killed, for the reason- that the violation of
 
 *417
 
 the contract, put the defendant in the wrong, and it then became matter of
 
 exculpation,
 
 by way of mitigating damages, to show that the injury was the result of accident, and could, in no degree, be attributable to the fact of the violation of the contract; for instance, that the slave had been killed by a stroke of lightning, or the falling of a tree in a sudden storm, or died of sickness. Clearly the burden of proving matter, which is only allowed in mitigation, must be on the defendant.
 

 The principle is this, when a contract of bailment is violated, and the property is damaged,
 
 prima facie
 
 it is an injury for which the bailee is liable, because, in the absence of proof as to how the matter occurred, thereNs no telling whether it would, or would not have happened, but for a breach of the contract, and the bailee being in the wrong, it is for him to relieve himself from blame, in respect to the actual loss, by proving that it happened in such a way as to show that it could, in no wise, be attributed to the fact of the breach of the contract, or be considered as a consequence thereof, but was an accident unlooked for and unforeseen, and such as could not have reasonably been presumed to have been in contemplation of the parties when the contract was made, so as to show that the loss was
 
 damnum absque i/n-jim-ia.
 

 It was suggested, in the argument, that
 
 Bell
 
 v.
 
 Bowen, 1
 
 Jones’ Rep. 316, and
 
 Ashe
 
 v.
 
 De Rosset,
 
 5 Jones’ Rep. 278, seemed, in some measure, to conflict. But we apprehend, although there is, confessedly, some difñculty in making the application, the principle above stated, fully sustains the difference in the two cases, and the dictum of
 
 Twidy
 
 v.
 
 Sanderson,
 
 9 Ire. Rep. 5. In the former, it was in the contemplation of the parties, when the contract was made, that the life of the slave would be in more danger if he was taken out of the county, and the bailee took the risk on himself, in the same manner that the law puts it on a bailee, who violates the terms of the contract; consequently, it made no difference how the slave lost his life, whether by sickness or the
 
 *418
 
 falling of a tree, for all kinds of exposure were guarded against, and death from any cause, while the slave was out of the county, was considered not to be a loss too remote to be included in the damages. In the latter, the burning of the rice was considered not to be a consequence of an omission to beat it in its turn, which could reasonably be presumed to have been in the contemplation of the parties when the contract was made, but was a mere accident unlooked for and unforeseen, which could, in no sense, be attributed to the omission, and the damage was held, therefore, to be too remote.
 

 Our case falls on the side of Bell and Bowen ; for it is evident, that it was in contemplation of the parties that the life of the slave would be more exposed if he was left to work with others, without an overseer or with a black overseer, (who could not prevent fighting and other kinds of disorder) than “ if he was under the eye of a white overseer all the time; and as the contract, in this respect, was violated by the defendant, and the slave lost his life, the damage is
 
 prima, facie,
 
 attributable to such violation, and matter of exculpation, as that he was killed by lightning, or the falling of a tree in a sudden storm, or from sickness, in respect to which, the presence of a
 
 white overseer
 
 could have had no effect, one way or the other, must be proved by the defendant; for being put in the wrong, he is liable to an action, and the plaintiff is entitled to recover the amount of his loss, unless the defendant can reduce it to nominal damages, by showing in mitigation, that the actual loss was a consequence so remote, as in no wise to be attributable to the absence of a white overseer.
 
 Venwe de novo.
 

 Per CuRiAM, Judgment reversed.