## EUGENE T. MILES vs. EMILY A. BARROWS.

Middlesex. Oct. 19. — Nov. 29, 1876. Feb. 28. — June 26, 1877
SOULE, J., absent.

At the time of making a bargain for the sale of a lot of land fronting on a street, it was agreed that the land should be surveyed by a surveyor, giving the purchaser seventy-five feet on the street and beginning at a point two hundred and twenty-five feet distant westerly from the land of a third person, and stakes put down indicating the corners. This was done, and a deed was subsequently made in which the point of beginning and the length on the street were described as in the agreement, and the other bounds were also given. Following the habendum was a clause whereby the grantee agreed to put up and maintain, without cost to the grantor, suitable fences wherever the premises adjoined land of the grantor. The grantor at the time owned land fronting on the street on each side of the lot conveyed, and fences were erected by the grantee on the lines indicated by the stakes, either before or upon receiving the deed. After eighteen years' occupation, the grantee discovered that the surveyor had made a mistake in the point of beginning, and that the stake had been placed and the fence built two hundred and twenty-six feet and six inches from the land of the third person ; and moved the fence eighteen inches towards the land of that person. *Held,* in an action of trespass against him for this act, that the extrinsic evidence above stated was competent, and would justify a finding that his true line was that indicated by the stakes.

In an action of tort for breaking and entering the plaintiff's close and removing a fence, the defendant's bill of exceptions stated that the judge found that the damages to the fence did not exceed $10, and the injury to the plaintiff by being deprived of the use of his land did not exceed $5 ; and assessed damages in the sum of $100. *Held,* that no ground of exception appeared.

TORT for breaking and entering the plaintiff's close in Newton, removing a division fence therefrom, taking possession of a strip of land belonging to the plaintiff, and setting up a fence across his land.

At the trial in the Superior Court, without a jury, *Brigham,* C. J., found certain facts, which are stated in the opinion of the court, and ruled that the plaintiff was entitled to recover. On the question of damages, the defendant contended that the plaintiff, if entitled to recover at all, could recover only nominal damages. The judge found that the damages to the plaintiff's fence did not exceed $10 ; that the injury sustained by the plaintiff by being deprived of the use of his land did not exceed $5 ; and assessed damages in the sum of $100. The defendant alleged exceptions.

The case was submitted on briefs in October, 1876, and judgment ordered in November, 1876, overruling the exceptions.

The defendant then moved for a rehearing, and upon this motion the case was argued in writing in February, 1877.

*D. E. Ware*, for the defendant.

*J. B. Goodrich*, for the plaintiff.

MORTON, J.    The question, upon which the liability of the defendant depends, is whether the easterly line of her lot is the line upon which the fence has stood for eighteen years or a line eighteen inches further east.    This is to be determined by the construction of the deeds under which she claims, aided, so far as is competent, by extrinsic evidence.

On December 8, 1854, the defendant's lot was conveyed to John F. Boyd by two deeds, one from Samuel Jennison, Jr., guardian of John and Frank T. Richardson, and the other from Edward H. Eldredge, guardian of Ralph Eldredge.    The descriptions and terms of the two deeds are the same.    They conveyed to Boyd all the right, title and interest of the minor wards " in and to a certain lot or parcel of land situated in said Newton Corner on the northerly side of Elm Street, and bounded and described as follows, viz : beginning at a point on said Elm Street two hundred and twenty-five feet westerly from land now occupied by William Whall, and running northerly at a right angle with said street one hundred and thirty-six feet, more or less, to land of the Worcester Railroad Corporation ; thence on said corporation's land westerly eighty-five feet to other land of said minors and of the minor child of their sister lately deceased ; thence southerly in a line parallel with the first mentioned boundary ninety-five feet, more or less, to said street ; thence on said street easterly seventy-five feet to the point of beginning ; said parcel containing by estimation eight thousand eight hundred and thirty-seven square feet," and being " the same on which the said Boyd has recently erected a two story dwelling-house."    After the habendum, the deeds contain the provision that " the said Boyd agrees to put up and maintain, without cost to said minors or either of them, suitable fences wherever the premises adjoin land owned by said minors or either of them."    At this time the said minors owned the land upon the easterly and westerly sides of the lot conveyed to Boyd.    The lot on the easterly side has since been conveyed to and is now owned by the plaintiff.

It appeared at the trial that, when Boyd and the grantors bargained for the lot, they agreed that a surveyor, one Woodward, should be employed to survey the lot, beginning at a point two hundred and twenty-five feet from Whall's land, and giving to Boyd seventy-five feet on Elm Street, and to ascertain the area, as the price was to be fixed by the square foot. The surveyor measured the lines, put down stakes at the corners of the lot and made a plan of the premises, which the grantors afterwards used in drawing their deeds. Boyd, either before or upon receiving the deeds, erected fences on the lines indicated by the stakes, and he and his grantees maintained them in the same place for eighteen years. At the end of that time it was discovered that Woodward had made a mistake in the measurement of the line of two hundred and twenty-five feet from Whall's land, and had put down his stakes eighteen inches further west. And the defendant now claims that her true easterly line begins at a point two hundred and twenty-five feet from Whall's line, and is not on the line of the fence erected by Boyd.

The question is whether this evidence was competent and would justify the finding of the Superior Court that her true line was the line of the fence.

The general principles upon which the defendant relies are not in dispute. A conveyance of land can only be by deed, and parol evidence is not admissible to control or vary a deed. If the description in it is certain and unambiguous, it is not competent to prove that the parties had any intention different from that expressed. But if, upon applying a deed to the land, it is found to be ambiguous, parol evidence of the surrounding circumstances and of the acts of the parties is competent to aid in the interpretation of the deed, and to enable the court to ascertain what was the intention of the parties in the words which they have used. This rule has been applied in a variety of cases, none of which, from the nature of things, are exactly like the present case, but which illustrate the principle. *Makepeace* v. *Bancroft*, 12 Mass. 469. *Waterman* v. *Johnson*, 13 Pick. 261. *Frost* v. *Spaulding*, 19 Pick. 445. *Stone* v. *Clark*, 1 Met. 378. *Kellogg* v. *Smith*, 7 Cush. 375. *Chester Emery Co.* v. *Lucas*, 112 Mass. 424. The defendant contends that it does not apply in this case, because the deeds to Boyd are free from ambiguity.

Her argument is that these deeds fix clearly the southeast corner of the lot conveyed at a point on said Elm Street two hundred and twenty-five feet westerly from Whall's land, and that there is nothing in the deeds to control this. Whether, if there had been no allusion in the deeds to any fence or other monument, it would have been competent to show by parol that the parties, before or at the delivery of the deeds, put down stakes and built fences, intending them as monuments, we need not decide. The deeds to Boyd call for fences upon the easterly and westerly lines of the lot conveyed. It is true that the fences are not named specifically as monuments or boundaries of the lot, so that if the deeds were to be construed by themselves, without any reference to the situation of the subject of them, it might not be clear that the intention was to recognize and adopt the fences as monuments. But the fences were in fact erected at or before the time the deeds were delivered. So that, when the deeds are applied to the land, it is found that a lot is marked out by fences, referred to in the deeds, corresponding in all particulars with the description of the deeds, except that the point of beginning is eighteen inches further west than the point named in the deeds. The deeds themselves at once suggest the question whether the parties intended to convey the lot included within the fences. In other words, upon applying the deeds to the land, a latent ambiguity arises, and it is competent to show by parol that the fences were erected by agreement of the parties, and were intended to mark the monuments and boundaries of the lot conveyed. There can be no doubt, upon the facts in this case, that both parties understood and intended that the fences should be monuments defining the boundaries of the lot conveyed. The case is one therefore where parties, having bargained for land, marked it out and set up monuments defining its boundaries, but, by mistake, one of the distances named in the deeds does not conform to the monuments. In such a case, it is clear that the monuments control.

The defendant relies upon *Cleaveland* v. *Flagg*, 4 Cush. 76, but the two cases are clearly distinguishable. Without referring to other differences, a vital distinction exists in the fact that in that case, as stated by Chief Justice Shaw in the opinion, " **no** fence was alluded to in the deed, as a monument. **The fence**

was not set up with a view to make it a monument, and there was no uncertainty respecting the true line."

We are therefore of opinion that there was no error of law in the finding of the Superior Court that the plaintiff was entitled to recover.

The question of damages was peculiarly within the province of the judge who tried the case. All the evidence is not reported, and we have neither the means nor the right to revise his finding as to the amount of damages sustained by the plaintiff.                                                    *Exceptions overruled.*